**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| MEERKAT TECHNOLOGIES INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:20-cv-00471-MTT |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| DRIFT NET, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT AND
COUNTERCLAIM FOR PATENT INFRINGEMENT**

Defendant Drift Net, LLC ("Drift Net") by its attorneys, J.A. Schneider and Marla R. Butler, of the law offices of Thompson Hine LLP, and Thomas L. Duston, John J. Lucas, and Chelsea M. Murray, of the law offices of Marshall, Gerstein & Borun LLP hereby submits its Answer to the Complaint for Patent Infringement and Jury Demand of Plaintiff Meerkat Technologies Inc. ("Plaintiff" or "Meerkat") and its Counterclaim for Patent Infringement. To the extent not specifically admitted herein, the allegations of the Complaint are denied.

**NATURE AND BASIS OF ACTION**

1. Drift Net admits that Meerkat's complaint states an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 - 2202 and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*. Drift Net admits that Meerkat's complaint seeks declarations and findings that Meerkat and its customers making, using or selling Meerkat products and services do not infringe any valid claims of U.S. Patent No. 10,810,845 ("the '845 patent"). Drift Net admits that Meerkat's complaint seeks a declaration that each of the claims of the '845 patent are invalid for failure to meet the requirements of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112 and/or 116 thereof, and the rules, regulations, and laws pertaining thereto. Drift

Net admits that Meerkat's complaint seeks an injunction, general and punitive damages, and the recovery of its attorneys' fees and costs. Drift Net admits that a true and correct copy of the '845 patent is attached as Exhibit A to Meerkat's complaint. Drift Net admits that the '845 patent is entitled "Security System for Detecting Hazardous Events and Occupants in a Building." Drift Net admits that the Abstract of the '845 patent describes a detection/security system for detecting dangerous events in a school or other buildings. Drift Net denies that Meerkat and its customers making, using or selling Meerkat products and services do not infringe any valid claims of the '845 patent. Drift Net denies that any of the claims of the '845 patent are invalid for failure to meet the requirements of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112 and/or 116 thereof, and the rules, regulations, and laws pertaining thereto. Drift Net denies that Meerkat is entitled to an injunction, general and punitive damages, and the recovery of its attorneys' fees and costs. All remaining allegations are denied.

## THE PARTIES

2.     Drift Net lacks sufficient information to admit or deny Meerkat's status as a Delaware corporation that is registered in Georgia as a foreign corporation, and/or its principal place of business, and demands strict proof thereof. Drift Net lacks sufficient information to admit or deny Meerkat's primary business, location of its headquarters, and/or where in the country it provides its services to customers, and demands strict proof thereof. The remaining allegations of this paragraph are denied.

3.     Admitted.

4.     Admitted.

5.     Drift Net admits that it is the owner of the '845 patent. Drift Net admits that a copy of a letter it sent to Meerkat is attached to Meerkat's complaint as Exhibit B. The remaining allegations of this paragraph are denied.

2

## JURISDICTION AND VENUE

6. Drift Net admits that Meerkat's complaint states a cause of action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 - 2202 and under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., but denies Meerkat's assertions. For purposes of this action only, Drift Net does not contest subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). The remaining allegations of this paragraph are denied.

7. Drift Net admits that this Court has personal jurisdiction over Meerkat. Drift Net lacks sufficient information to admit or deny the location of Meerkat's headquarters, and demands strict proof thereof. The remaining allegations of this paragraph are denied.

8. For purposes of this action only, and without admitting that Drift Net is properly subject to personal jurisdiction in this Court, Drift Net does not contest this Court's personal jurisdiction over Drift Net. Drift Net admits that it sent a letter to Meerkat on November 5, 2020 at its Monticello, Georgia address asserting infringement of the '845 patent by the Meerkat Safe, but denies that the sending of such a letter constitutes "extra-judicial patent enforcement conduct" subjecting it to personal jurisdiction in this Court. The remaining allegations of this paragraph are denied.

9. Drift Net admits that its November 5, 2020 letter to Meerkat recites the language quoted in paragraph 9 of Meerkat's complaint.

10. For purposes of this action only, Drift Net does not contest venue.

11. Drift Net admits that there is a substantial controversy concerning Meerkat's infringement of the '845 Patent. Drift Net denies that Meerkat is entitled to the declaratory judgment it seeks and otherwise denies the remaining allegations of this Paragraph.

## BACKGROUND OF CONTROVERSY

12. Drift Net lacks sufficient information to admit or deny when Meerkat first began selling real-time asset and personnel tracking solutions in the safety and security space, and demands strict proof thereof. On information and belief, Drift Net alleges that Meerkat did not sell systems infringing the '845 Patent prior to the effective filing date of the claimed invention.

13. Drift Net admits that it sent a letter dated November 5, 2020 outlining Meerkat's infringement of the '845 patent by reason of at least its Meerkat Safe product. Drift Net admits that its November 5, 2020 letter asked for Meerkat to immediately cease and desist its sale, use and/or marketing of Meerkat Safe. All remaining allegations of this paragraph are denied.

14. Drift Net lacks sufficient information to admit or deny the fact of or degree of concern purportedly caused to Meerkat by Drift Net's November 5, 2020 letter, and demands strict proof thereof. Drift Net denies that its November 5, 2020 letter could improperly impact or improperly interfere with Meerkat's relationships with its current customers, unjustifiably cause lost sales for current and future customers, and harm any business reputation that Meerkat deserves. All remaining allegations of this paragraph are denied.

15. Denied.

16. Denied.

17. Denied.

18. Denied.

19. Drift Net admits that the '845 Patent claims priority to U.S. Provisional Appl. No. 62/791,459. Drift Net denies the remaining allegations of this Paragraph.

20. Drift Net denies that its infringement allegations interfere with any ability of Meerkat to legally sell to or service its customers in the absence of authorization from Drift Net.

## COUNT I
## DECLARATION OF NON-INFRINGEMENT

21. Drift Net reincorporates its answers to Paragraphs 1 through 20 as if fully set forth herein.

22. Admitted.

23. Denied.

24. Drift Net admits that Meerkat's infringement of the valid and enforceable claims of the '845 Patent establishes a sufficient case and controversy for purposes of this Court's subject matter jurisdiction.

25. Denied.

## COUNT II
## DECLARATION OF INVALIDITY

26. Drift Net reincorporates its answers to Paragraphs 1 through 20 as if fully set forth herein.

27. Drift Net admits that Meerkat's infringement of the valid and enforceable claims of the '845 Patent establishes a sufficient case and controversy for purposes of this Court's subject matter jurisdiction.  Drift Net denies the remaining allegations of this paragraph.

28. Denied.

29. Denied.

30. Denied.

## COUNT III
## O.C.G.A. §10-1-770

31. Drift Net reincorporates its answers to Paragraphs 1 through 20 as if fully set forth herein.

32. Denied.

33. Denied.

34. Drift Net denies that any claims of the '845 Patent are invalid and denies the remaining allegations of this Paragraph.

35. Denied.

36. Denied.

## JURY DEMAND

Plaintiff's request for a jury demand requires no response. Drift Net requests trial by jury of all issues so triable with respect to Meerkat's causes of action, as well as those asserted in Drift Net's Counterclaim for Patent Infringement.

## REQUEST FOR RELIEF

Drift Net denies that Meerkat is entitled to any relief or recovery whatsoever and therefore denies each and every allegation or request contained in Meerkat's Request for Relief.

## AFFIRMATIVE DEFENSES

Without conceding that any of the following must be pled as an affirmative defense or that any of the following is not already pled by virtue of the foregoing denials, and without prejudice to Drift Net's right to plead additional defenses as discovery into the facts of the matter may warrant, Drift Net hereby asserts the following defenses without admitting, undertaking or shifting any applicable burdens of proof.

## FIRST AFFIRMATIVE DEFENSE
### (ESTOPPEL)

Meerkat's claims for bad faith assertions of patent infringement are barred, in whole or in part, by the equitable doctrine of estoppel.

## SECOND AFFIRMATIVE DEFENSE
### (UNCLEAN HANDS)

Meerkat's claims for bad faith assertions of patent infringement and its request for equitable relief are barred, in whole or in part, by the equitable doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE
### (NO DAMAGES)

Meerkat has not suffered any damages attributable to, or caused by, Drift Net.

## COUNTERCLAIM FOR PATENT INFRINGEMENT

Defendant / Counterclaim-Plaintiff Drift Net, LLC ("Drift Net") by its attorneys, J.A. Schneider and Marla R. Butler, of the law offices of Thompson Hine LLP, and Thomas L. Duston, John J. Lucas, and Chelsea M. Murray of the law offices of Marshall Gerstein & Borun LLP, hereby brings this action for patent infringement against Plaintiff / Counterclaim-Defendant Meerkat Technologies Inc. ("Meerkat"), and alleges as follows:

### PARTIES

1. Drift Net is a Limited Liability Company having a principal place of business at 71 S Wacker Drive, Chicago, Illinois 60606.

2. Drift Net is a leader in developing the most innovative technological solutions to keep communities safe from threats, such as active shooters and COVID-19.

3. Specifically, Drift Net offers its customers the KnowWhere Campus Safety System and Infection Detection System to give educational institutions the ability to know where students are on campus, identify threats early, respond immediately, and provide actionable information to first responders in an emergency.

4. As alleged in Paragraph 2 of Meerkat's complaint, Meerkat is a Delaware corporation that is registered in Georgia as a foreign corporation with a principal place of business located at 1871 Palalto Road, Monticello, Georgia 31064.

7

5.  Meerkat makes, sells, uses, offers to sell and imports, in and into the United States, including in and into their District, the Meerkat Safe, which specializes in the "tracking of assets in real-time on a 3D map of a facility." *See* https://www.meerkat-tech.com/meerkat-safe.html.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over these Counterclaims under at least 28 U.S.C. §1338.

7.  Meerkat consented to the personal jurisdiction of this Court at least by commencing its action for declaratory judgment in this district, as set forth in its Complaint.

8.  Venue is proper in this district pursuant to at least 28 U.S.C. §§ 1391 and 1400.

9.  Meerkat has waived any challenge to venue by filing this action, including its claim for declaratory judgment, against Drift Net in this Court.

## PATENT-IN-SUIT

10. Drift Net is the assignee of all right, title and interest in United States Patent No. 10,810,845 ("Patent-in-Suit" or "'845 patent"), including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '845 patent. Accordingly, Drift Net possesses the exclusive right and standing to prosecute the present action for infringement of the '845 patent by Meerkat.

11. The '845 patent is entitled "Security system for detecting hazardous events and occupants in a building" and issued October 20, 2020.

12. The '845 patent is valid and enforceable.

13. The inventions disclosed in the '845 patent are a result of the pioneering efforts of Aaron Brent Coles.

14. Aaron Brent Coles is the sole inventor of the '845 patent.

15. Mr. Coles was inspired to develop the technology described and claimed in the '845 patent by repeated reports of mass school shootings. Mr. Coles sought through his invention to keep children safe.

16. Mr. Coles realized that prior art security camera systems in schools failed to provide educational institutions and law enforcement with an actionable response to emergency security situations, such as a school shooting.

17. Specifically, such prior art systems were completely ineffective in providing educational institutions and law enforcement with live, actionable information to both apprehend security threats and save potential victim's lives and property during an active, ongoing school shooting.

18. Mr. Coles realized that the prior art security technology implemented by educational institutions further failed to provide first responders with a way to both identify and locate individuals and objects on a school campus. For example, Mr. Coles realized that Global Positioning System (GPS) technology was not accurate enough to provide authorities with specific location data of an individual, especially while indoors.

19. Mr. Coles therefore worked to resolve these problems with the novel technology disclosed in the '845 patent, which provides law enforcement and educational institutions with the more accurate information on the location of individuals and objects within a school campus.

20. The inventions disclosed in the '845 patent were breakthroughs in the field of security detection and threat prevention. Nathan Barret, the Superintendent of the Hanover Area School District in Pennsylvania declared that Drift Net products have made his district "one of the safest schools in Pennsylvania."

21. The patented inventions disclosed in the '845 patent resolve technical and logistical problems related to maintaining and implementing security of a campus or building, all while preserving the privacy of its occupants. Studies, such as those conducted by Dr. Scott Rogers, the Superintendent of Tooele County School District in Utah, had identified the need for timely security updates as one of the highest concerns for schools like those in his district.

22. Schools, such as those in the Tooele County School District, have installed Drift Net's system with the goal of "improve[ing] safety and security for all students, staff, and visitors."

23. Prior art security systems were unable to adequately provide first responders with identification and location information of every pertinent individual and object in a campus or building during a security crisis. This resulted in the needless loss of life and destruction to property when a security crisis occurred.

24. First responders often are at a disadvantage in a school shooting crisis because the shooter is often familiar with the location's layout, having been a student or employee there. The inventions disclosed in the '845 patent advantageously provide law enforcement with dynamic map data of the building where the security threat is taking place.

25. The claims of the '845 patent recite inventive concepts that are deeply rooted in engineering and networking technology, and overcome problems specifically arising out of how to identify and locate individuals and objects amongst an enormous and continuous influx of false, unreliable, and irrelevant data.

26. The patented inventions disclosed in the '845 patent provide a new and novel solution to specific problems related to improving the identification of security threats, such as individuals who are fighting or individuals who are carrying a firearm or other weapon, while

preserving the ability of first responders to precisely respond to those threats with negligible to nonexistent collateral damage to other individuals or property.

27.  The claims in the '845 patent recite a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

28.  Further, the inventions disclosed in the '845 patent can determine if and where a weapon, such as a firearm or knife, is present in a school, as well as determine if and where two individuals are fighting on campus.

29.  The inventions disclosed in the '845 patent then forward this identification and location information to first responders, who use that information to quickly and precisely respond to and disarm security threats.

30.  Accordingly, the inventions disclosed in the '845 patent provide many advantages over the prior art.

## BACKGROUND FACTS

31.  Meerkat has been aware of the '845 patent since November 5, 2020, when its CEO, Christopher Fisher, PhD, received correspondence from Drift Net's counsel advising of Meerkat's infringement by reason of its Meerkat Safe product. Drift Net attached a copy of the '845 patent to the November 5, 2020 letter.

## COUNT I
## INFRINGEMENT OF THE '845 PATENT

32.  Drift Net incorporates the above paragraphs herein by reference.

33.  **Direct Infringement Under 35 U.S.C. § 271**. Meerkat has been and continues to directly infringe one or more claims of the '845 patent by making, using, offering to sell, selling

and/or importing, without limitation, at least the Meerkat Safe that infringes at least claims 1, 2, 3, and 15 of the '845 patent literally or by the doctrine of equivalence.

34. **Indirect Infringement Under 35 U.S.C. § 271.** Meerkat actively, knowingly, and intentionally has been and continues to induce infringement of the '845 patent, literally or by the doctrine of equivalence, by instructing its customers to use the Meerkat Safe in a manner that infringes one or more claims of the '845 patent.

35. Upon information and belief, Meerkat commits infringing activity in this district.

36. Upon information and belief, Meerkat first registered as a Limited Liability Company in Wyoming on March 28, 2019.

37. Upon information and belief, Meerkat's first commercial offer for sale of its Meerkat Safe product was on or after May 5, 2019.

38. Meerkat Safe performs a method for presenting an indoor map display of a building during a dangerous event.



39. In response to a dangerous event being detected, Meerkat Safe receives, at one or more processors in a client device, indoor map data for a building, including information indicative

of a floor layout of the building indicating a plurality of areas within the building and exits from the building.



40. Meerkat Safe presents, by one or more processors, an indoor map display of the building, based on the indoor map data.



41. For each of the plurality of areas within the building, Meerkat Safe receives, at the one or more processors, an indication of a number of occupants within the area determined via a multi-sensor device including an imaging camera and a thermal camera.

**OUR STORY**

Meerkat Technologies provides real-time asset tracking and safety solutions for today's ever-changing, digital world that demands instant feedback. With thousands of hours of research and field testing, Meerkat is poised to become one of the leading providers of RTLS (Real-Time Locating Systems) and RTS (Real-Time Sensor) solutions across a wide variety of application. Along with tracking assets, our solution extends to reading and processing a variety of IoT sensor data in real time; our current sensor technologies cover temperature, humidity, barometric pressure, gases, light, and motion.

- IDs
  - Electronic IDs provided to each Student / Staff
  - Readers around the building continuously report location of every Student / Staff
  - Panic alert features in the system can be activated for students/staff to report danger
    - Two types of alerts can be sent
      - One with double click of the button
      - Another with triple click of the button
  - Can replace current ID systems within your facilities

42. For each of the plurality of areas within the building, Meerkat Safe presents, by the one or more processors, the indication of the number of occupants on a portion of the indoor map display corresponding to the area, the indication identifying locations of each of the occupants within the portion of the indoor map display corresponding to the area.

- **Software used on a multi-sensor device**
  - 3D and 2D Indoor Mapping
  - "Real-time indicators displayed on 3D building maps"
  - "Location of personnel" " visualization on a mapping system (school's blueprint)"



43. For each of the plurality of areas, Meerkat Safe receives, at the one or more processors, locations of each of the occupants within the area.

- **Software used on a multi-sensor device**
  - 3D and 2D Indoor Mapping
  - "Real-time indicators displayed on 3D building maps"
  - "Location of personnel" " visualization on a mapping system (school's blueprint)"

14

44. For each occupant, Meerkat Safe presents, by the one or more processors, an indication of the occupant at a position within the indoor map display corresponding to the location of the occupant.



45. Meerkat Safe presents an indication of the occupant that includes presenting at the position within the indoor map display corresponding to the location of the occupant, by the one or more processors, identification information for the occupant.



46. Meerkat Safe comprises a plurality of areas that include rooms and hallways.



47. The infringement contentions listed above are based on Drift Net's current understanding of the Meerkat Safe, and Drift Net reserves the right to modify its infringement contentions as discovery progresses.

48. On information and belief, at least of the date of Drift Net's November 5, 2020 letter to Meerkat, Meerkat has willfully infringed and continues to willfully infringe the '845 patent despite knowledge of the '845 patent and despite an objectively high likelihood that the making, using, selling, offering for sale, or importing of Meerkat Safe would infringe one or more claims of the '845 patent.

49. On information and belief, at least of the date of Drift Net's November 5, 2020 letter to Meerkat, Meerkat knew or should have known, that its acts would result in the actual infringement of one or more of the claims of the '845 patent, and thereby intended such infringement.

50. Drift Net is entitled to recover damages adequate to compensate for Meerkat's infringement, including profits lost as a consequence of Meerkat's infringement and in no event an amount less than a reasonable royalty.

51. Drift Net has been and continues to be harmed irreparably by Meerkat's infringement in a manner that cannot be adequately compensated in full by means of monetary damages.

## JURY DEMAND

52. Under Rule 38(b) of the Federal Rules of Civil Procedure, Drift Net respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Drift Net respectfully requests the following relief:

A. A judgment that Meerkat has infringed one or more claims of the '845 patent;

  B. An award of money adequate to compensate Drift Net for Meerkat's infringement, including lost profits, and no less than a reasonable royalty, and including pre- or post-judgement interest, costs, and disbursements as justified under 35 U.S.C. § 284;

  C. A determination that Meerkat's infringement was willful and an award of treble damages in accordance with 35 U.S.C. § 284;

  D. A determination that this case is exceptional within the meaning of 35 U.S.C. § 285 and that Drift Net be awarded its reasonable attorneys' fees against Meerkat that it incurs in prosecuting this action;

  E. An award of Drift Net's costs, and expenses that it incurs in prosecuting and defending against this action;

  F. Preliminary and permanent injunctive relief; and

  G. An award of such further relief at law or in equity as the Court deems just and proper.

Dated: February 5, 2021.

        By: */s/ J.A. Schneider*
           J.A. Schneider
           Georgia Bar No. 141437
           Marla R. Butler
           Georgia Bar No. 099917
           **THOMPSON HINE LLP**
           Two Alliance Center
           3560 Lenox Road, Suite 1600
           Atlanta, Georgia 30326
           Telephone: 404-541-2900
           Facsimile: 404-541-2905
           *ja.schneider@thompsonhine.com*
           *marla.butler@thompsonhine.com*


           -and-

                Thomas L. Duston
Illinois Bar No. 6196612
(*Admitted PHV*)
John J. Lucas
Illinois Bar No. 6330053
(*Admitted PHV*)
Chelsea M. Murray
Illinois Bar No. 6333119
(*Admitted PHV*)
**MARSHALL, GERSTEIN & BORUN, LLP**
233 S. Wacker Drive, 6300 Willis Tower
Chicago, Illinois 60606
Telephone:     312-474-6300
*tduston@marshallip.com*
*jlucas@marshallip.com*
*cmurray@marshallip.com*

*Attorneys for Defendant Drift Net, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT AND COUNTERCLAIM FOR PATENT INFRINGEMENT with the Clerk of Court which will provide automatic notification of such filing to the following counsel of record:

David Ludwig
**DUNLAP, BENNETT, & LUDWIG, PLLC**
211 Church Street, S.E.
Leesburg, Virginia 20175
*dludwig@dbllawyers.com*

Geoffrey M. Dureska
**DUNLAP, BENNETT, & LUDWIG, PLLC**
1870 The Exchange, S.E., Suite 200
Atlanta, Georgia 30339
*gdureska@dbllawyers.com*

This 5th day of February 2021.

*/s/ J.A. Schneider*_____
J.A. Schneider
Georgia Bar No. 141437